**Mangini v. Southeastern Pennsylvania Transportation Authority**

*Sanford I. Jablon*, for plaintiff.
*Norman Hegge, Jr.*, for defendant.

GREENBERG, J., September 7, 1978—Prior to our assignment as supervising judge for discovery motions there existed some divergence in the rulings of our colleagues as to the production of SEPTA accident reports. This divergence was cited by SEPTA in its memoranda in opposition to the motions filed for the production of those reports.

Since we have been handling these we have uniformly ruled that those reports are subject to discovery. They are made routinely as part of company policy and are used, among other things, as a basis for the disciplining of drivers involved. In addition, they are prepared and filed where no possibility of a claim against SEPTA exists, i.e., where a SEPTA vehicle comes into contact with SEPTA property inside a SEPTA garage. The same information is furnished by the driver in all of the reports. The fact that a majority of the cases in which they are prepared result in claims against SEPTA does not automatically mean that they are prepared in anticipation of litigation. This argument would have more validity if some selectivity was involved. We are hard put to find a more classic example of a routine report than one which, by company policy, must be prepared after every incident and which is

used for purposes other than the processing of claims. Suffice it to say that SEPTA has not demonstrated to us that these are other than routine reports and as such they are discoverable.

In view of the uniformity of our rulings SEPTA can no longer rely on the divergence of rulings argument. In its place they now argue that they must resist providing the report in order to preserve their appellate rights. Entirely aside from the question of the materiality of this issue in any appeal taken after a trial, it seems to us that this right can be preserved by means other than adding to an already congested motion list. For instance, a proper writing indicating that the report was being furnished because of the policy of our court as clearly set forth in our rulings might be one way. Another might be the filing of a stipulation with opposing counsel and approved by the court indicating that the right to appeal was being preserved. Certainly opposing counsel would prefer these or other methods to the filing of a formal motion. While we, of course, cannot and will not speak for the appellate courts it seems to us that in the unlikely event that the furnishing of the report would furnish some basis for appeal, the examples we have given should avoid the problem in this connection. We are sure that excellent counsel who represent SEPTA* can think of still more ways to avoid this problem without subjecting their clients to the imposition of sanctions in the form of counsel fees.

What we all seek after all, is justice, and our

---

*We are quite serious in our description of counsel as excellent. We have always been impressed with the diligence and thoroughness of preparation of SEPTA counsel as well as their cooperation with the court. This applies to supervising counsel as well as those engaged only in trials.

adversary system, even in civil cases, is designed to determine the truth. We firmly believe that furnishing the report is of great aid in attaining this goal while not resulting in any real prejudice to SEPTA. Hopefully, some day they will agree. Meanwhile we shall continue to impose proper sanctions including counsel fees, where same are requested.

## ORDER

And now, September 7, 1978, plaintiff's motion for production of documents is granted and it is ordered that defendant shall produce a copy of the accident report filled out by defendant's employe, James J. Mangini, Sr., in connection with the accident involving the parties herein which occurred on June 22, 1977, within 30 days of the date of this order, at the office of plaintiff's counsel, or appropriate sanctions will be imposed upon application to the court.

